## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PENNSYLVANIA MANUFACTURERS INDEMNITY COMPANY, | : : : : |
| Plaintiff, | : : |
| v. | : : : |
| SIX CONTINENTS HOTELS, INC., AND HOLIDAY HOSPITALITY FRANCHISING, LLC, | : : : : : |
| Defendants. | : : |

Civ. A. No. _____

## COMPLAINT

Plaintiff, Pennsylvania Manufacturers Indemnity Company ("PMIC"), by and through its undersigned counsel, hereby makes its complaint against Six Continents Hotels, Inc. ("Six Continents") and Holiday Hospitality Franchising, LLC ("Holiday Hospitality") (together, "Defendants"), and in support hereof, avers as follows:

## INTRODUCTION

1. This action is filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as there is an actual case and controversy between the parties that requires adjudication by the Court.

2. PMIC seeks a declaration that it has no duty to defend or indemnify Defendants with respect to a civil action filed against them by an alleged victim of sexual trafficking, i.e. <u>R.C. v. Choice Hotels International, Inc., et al.</u>, United States District Court for the Southern District of Ohio, No. 22-CV-2690 (the "R.C. Complaint").

{M0356323.1}

## PARTIES

3. PMIC is an insurance company incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 380 Sentry Parkway, Blue Bell, PA 19422.

4. Six Continents is a Delaware corporation with its principal place of business at 3 Ravinia Drive, Suite 100, Dunwoody, GA, 30346.

5. Six Continents is a parent company (in the United States) of InterContinental Hotels Group, PLC ("IHG"), a public limited company organized under the laws of the United Kingdom. IHG manages the brands of approximately 5,600 hotels throughout almost 100 countries, and Six Continents is responsible for all brand standards at IHG brand hotels in the United States. Six Continents also owns, operates, or otherwise manages the software program for making reservations at IHG brand hotels.

6. Holiday Hospitality is a wholly owned subsidiary of IHG. Holiday Hospitality is a Delaware limited liability company with its principal place of business at 3 Ravinia Drive, Suite 100, Dunwoody, GA, 30346.

7. Defendants own, supervise, manage, control and/or operate the Holiday Inn Express and Suites hotel ("Holiday Inn") located at 898 Arlington Ridge East, Akron, OH 44312.

## JURISDICTION AND VENUE

8. Six Continents is subject to the jurisdiction of this Court because it is a Delaware corporation and regularly conducts business in this District, including through the operation of numerous hotels.

9. Holiday Hospitality is subject to the jurisdiction of this Court because it is a Delaware limited liability company and regularly conducts business in this District, including through the operation of numerous hotels.

10. Diversity jurisdiction is proper under 28 U.S.C. § 1332, because complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. PMCI seeks a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. An actual controversy exists regarding the parties' rights, duties, and/or obligations under a policy of insurance issued by PMIC, and this Court therefore has jurisdiction to declare the rights and legal obligations of any interested party seeking relief.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**FACTUAL BACKGROUND**
**The R.C. Complaint**

13. The R.C. Complaint was filed in the United States District Court for the Southern District of Ohio, alleging violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a).[1]

14. The R.C. Complaint specifically alleges that Defendants are complicit in her sexual trafficking. A copy of the R.C. Complaint is attached hereto as **Exhibit A**.

15. The TVPRA prohibits Defendants from engaging in any venture they know or should know involves trafficking, and thereby establishes a non-delegable duty of reasonable care to detect and avoid participation in and benefiting from what they know or should know involves a trafficking venture.[2] See Ex. A at ¶ 37.

16. The R. C. Complaint alleges that, as part of a conspiracy to save costs and make reap millions of dollars in profits, Defendants generally failed to create, adopt, implement, and

---

[1] The R.C. Complaint alleges that R.C. was also trafficked at a separate hotel location owned and/or operated by Choice Hotels International, Inc. ("Choice Hotels"). PMIC does not insure Choice Hotels with respect to that location, and Choice Hotels has not sought insurance coverage from PMIC with respect to the R.C. Complaint.

[2] PMIC refers to certain factual allegations of the R.C. Complaint, as set forth herein, without taking any position as to their veracity.

enforce company-wide policies and procedures regarding human trafficking (or suspected) at the branded properties; Defendants did not train staff on how to identify and respond to suspected human trafficking; Defendants failed to require training of all employees on human trafficking policies and procedures; and Defendants failed to conduct audits confirming compliance with policies and procedures. See Ex. A at ¶ 41.

17. The R. C. Complaint alleges that by means of a combination of force, coercion, violence, threats, manipulation, compelled use of and dependency on illegal substances, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, R.C. was held captive and sold for sex by her traffickers at the Holiday Inn approximately from 2010 to 2013. See Ex. A at ¶ 47.

18. The R. C. Complaint alleges that during the time that she was trafficked at the Holiday Inn, R.C.'s traffickers frequently rented rooms at the hotel because such rooms provided convenient, anonymous, and relatively central locations to which they could invite "johns" for the purpose of forcing R.C. to have sex with those "johns" for money. See Ex. A at ¶ 48.

19. The R. C. Complaint alleges that during her captivity at Defendants' hotel, R.C. was subjected to rape, frequent physical and verbal abuse, malnourishment, psychological torment, kidnapping, and false imprisonment permitted by Defendants' brand hotel employees and managers. See Ex. A at ¶ 53.

20. The R. C. Complaint alleges that at the Holiday Inn, R.C. encountered the same staff on multiple occasions and that such staff would have seen the signs of R.C.'s deterioration brought on by the abuse perpetrated by her traffickers, including bruising and physical and verbal abuse occurring in public areas of Defendants' hotel. See Ex. A at ¶ 54.

21. The R. C. Complaint alleges that her traffickers of R.C. followed a repetitive and routine procedure during stays at the Holiday Inn such that the hotel knew or should have known of R.C.'s trafficking. See Ex. A at ¶ 55.

22. The R. C. Complaint alleges that her stays at the Holiday Inn resulted in several consistent red flags, including, but not limited to: paying for stays in cash; paying for extended stays on a day-by-day basis; requesting a room away from other guests; obvious signs of illegal drug use; frequent requests for linen changes; unusually large numbers of used condoms left in the trash; unusually large number of male visitors asking for R.C. or her traffickers at the front desk; unusually large number of male visitors going in and out of R.C.'s room; physical abuse in public spaces; visible signs of prior/private physical abuse; asking the front desk not to be disturbed; and loud noises of abuse or other violence audible to staff and/or other rooms.  Police were called to the location numerous times because of noise complaints and drug usage and still nothing was done by Defendants to stop the traffickers. See Ex. A at ¶ 63-64.

23. The R. C. Complaint alleges that these red flags were open and obvious to anyone working at the Holiday Inn and lasted continuously for three years. See Ex. A at ¶ 66.

24. The R. C. Complaint alleges that Defendants profited from the sex trafficking of R.C. because defendants rented rooms to R.C.'s traffickers when they knew, or should have known, that human trafficking was prevalent within their branded property and at the specific locations where R.C. was trafficked. The hotel staff, especially front desk staff, at the Holiday Inn knew or should have known of the obvious signs of R.C.'s trafficking. See Ex. A at ¶ 77.

25. The R.C. Complaint alleges that Defendants' employees witnessed the obvious signs of R.C.'s trafficking including signs of abuse, frequent male visitors coming in and out of the room, condoms in the trash, loud yelling and fighting, and others. Despite having access to all

this information for years, Defendants failed to take reasonable measures to stop sex trafficking from occurring in their hotel. See Ex. A at ¶ 80.

26. The R. C. Complaint alleges that defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to prevent sexual exploitation on their property and that as a direct and proximate result of these egregious practices on the part of Defendants, R.C. has been permanently injured and damaged physically, emotionally, psychologically, and financially. See Ex. A at ¶ 81-82.

27. The R.C. Complaint alleges that Defendants exerted significant control over the Holiday Inn-branded hotel, including, inter alia, the right to enforce their brand standards by means of periodic inspections of hotel locations, backed up with the ultimate threat of termination of the franchise agreement. See Ex. A at ¶ 83-88.

28. The R.C. Complaint alleges that Defendants control the creation and promulgation of policies relating to training employees to recognize and respond to human trafficking, and that Defendants determine whether such training shall be mandatory and that Defendants have failed to mandate such training on any significant scale or specifically at the Holiday Inn where Plaintiff was trafficked. See Ex. A at ¶ 89-93.

## PMIC's POLICY ISSUED TO ALLIANCE HOSPITALITY, INC.

29. PMIC issued a business insurance policy (the "Policy") No. 821001-00-58-40-4 to Alliance Hospitality, Inc. ("Alliance") with an effective period of July 1, 2010 to July 1, 2011. The material portions of the Policy are attached hereto as **Exhibit B**.

30. The Policy contains an applicable endorsement entitled "Additional Insureds by Contract" (the "Additional Insureds Endorsement"). The Additional Insureds Endorsement provides:

> Section II - Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

31. Alliance is a party to a hotel management agreement (the "Management Agreement") with Jai Shirayam, Inc. ("Shirayam") to manage the Holiday Inn, which is designated a covered location under the Policy.

32. Under the terms of the Management Agreement, Alliance is obligated to insure Shirayam and any other persons and entities as may be required by any agreement to which Shirayam is bound.

33. Defendants own, supervise, manage, control, and/or operate the Holiday Inn and, upon information and belief, required Shirayam to name them as additional insureds under its liability policies.

34. Based on the foregoing, Defendants may qualify as additional insureds under the Policy.

35. However, the Insuring Agreement for the Policy's Coverage A (Bodily Injury and Property Damage Liability) provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

>against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

36. The "bodily injury" must have resulted from an "occurrence" during the policy period.

37. An "Occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

38. The "bodily injury" alleged in the R.C. Complaint did not result from an "occurrence," as defined by the Policy.

39. Rather, the R.C. Complaint alleges a "conspiracy" of profit-motivated decisions not to curb open/obvious sex trafficking at the Holiday Inn. See Ex. A at ¶ 41.

40. The Policy also excludes coverage for "bodily injury" that is "expected or intended from the standpoint of the insured."

41. Again, the R.C. Complaint alleges a "conspiracy" of profit-motivated decisions not to curb open/obvious sex trafficking at the Holiday Inn. See Ex. A at ¶ 41.

42. Furthermore, the Additional Insureds Endorsement excludes coverage for bodily injury "caused by the sole negligence of the additional insured or by anyone acting on behalf of the additional insured."

43. Under the allegations of the R.C. Complaint, the alleged bodily injury to R.C. at the Holiday Inn resulted from the sole negligence of entities seeking additional insured coverage, i.e. Defendants, who are the only parties against whom the R.C. Complaint asserts a claim with respect to her alleged trafficking at the Holiday Inn.

44. The allegations of the R.C. Complaint allege that R.C.'s trafficking occurred in the face of "red flags" that were open and obvious. See Ex. A at ¶ 63-64.

45. Accordingly, even if Defendants are found to be additional insureds, PMIC has no duty to defend or indemnify Defendants with respect to the R.C. Complaint under the Policy because: (i) the allegations in the R.C. Complaint do not qualify as an accident or "occurrence," which might trigger coverage; (ii) the allegations in the R.C. Complaint resulted from the sole negligence Defendants; and (iii) the allegations in the R.C. Complaint were expected or intended from the standpoint of Defendants.

### **COUNT I – DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

46. PMIC incorporates the averments of Paragraph 1 through 45 of this Complaint as though set forth fully.

47. The alleged bodily injury to R.C. was not an accident or "occurrence."

48. The alleged bodily injury to R.C. resulted from the sole negligence of entities seeking additional insured coverage, i.e. Defendants.

49. The alleged bodily injury to R.C. was expected or intended by Defendants.

50. Accordingly, even if Defendants are found to be additional insureds, PMIC has no duty to defend or indemnify Defendants with respect to the R.C. Complaint.

51. PMIC seeks a declaration that PMA has no duty to defend or indemnify Defendants with respect to the R.C. Complaint under the Policy because: (i) the allegations in the R.C. Complaint do not qualify as an accident or "occurrence," which might trigger coverage; (ii) the allegations in the R.C. Complaint resulted from the sole negligence of Defendants; and (iii) the allegations in the R.C. Complaint were expected or intended from the standpoint of Defendants.

WHEREFORE, PMIC requests that this Court enter an Order declaring that: even if Defendants are found to be additional insureds, PMIC has no duty to defend or indemnify Defendants with respect to the R.C. Complaint under the Policy because: (i) the allegations in the

R.C. Complaint do not qualify as an accident or "occurrence," which might trigger coverage; (ii) the allegations in the R.C. Complaint resulted from the sole negligence of Defendants; and (iii) the allegations in the R.C. Complaint were expected or intended from the standpoint of Defendants.

        **MARKS, O'NEILL, O'BRIEN**
        **DOHERTY & KELLY, P.C.**

        */s/ Dawn C. Doherty*
        Dawn C. Doherty, Esq. (No. 3164)
        300 Delaware Avenue, Suite 900
        Wilmington, DE  19801
        (302) 658-6538
        *Attorney for Plaintiff*

DATED: December 16, 2022