IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PENNSYLVANIA MANUFACTURERS INDEMNITY COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SIX CONTINENTS HOTELS, INC., AND )<br>HOLIDAY HOSPITALITY )<br>FRANCHISING, LLC, )<br>)<br>Defendants. ) | Civil Action No. 22-1603-RGA |

## REPORT AND RECOMMENDATION

Pennsylvania Manufacturers Indemnity Company ("PMIC") filed a lawsuit against Defendants Six Continents Hotels, Inc. and Holiday Hospitality Franchising, LLC (together, the "Additional Insureds") seeking a declaratory judgment that PMIC has no obligation to defend or indemnify the Additional Insureds under an insurance policy issued by PMIC to non-party Alliance Hospitality, Inc. ("Alliance"). (D.I. 1). The Additional Insureds moved to dismiss PMIC's Complaint for failure to join a necessary and indispensable party. (D.I. 8). In the alternative, the Additional Insureds request that the Court either decline to exercise jurisdiction under the Declaratory Judgment Act or transfer the matter to the United States District Court for the Northern District of Ohio. (*Id.*). The motion is fully briefed, (D.I. 9, 15, 16), and I heard oral argument on August 10, 2023. For the following reasons, I recommend that the Additional Insureds' Motion to Dismiss be GRANTED.

FILED

NOV - 2 2023

U.S. DISTRICT COURT DISTRICT OF DELAWARE

I.  **Background**

The Additional Insureds are defendants in an action pending in the United States District Court for the Northern District of Ohio,[1] captioned *R.C. v. Choice Hotels International, Inc.; Six Continents Hotels, Inc.; and Holiday Hospitality Franchising, LLC*, Case No. 1:23-cv-872 (the "Underlying Action"). (D.I. 1 ¶¶ 13–14). In the Underlying Action, the plaintiff, R.C., alleges that she is a victim of sex trafficking, that she was trafficked in a hotel owned by the Additional Insureds, and that the Additional Insureds violated the Trafficking Victim Protection Reauthorization Act, 18 U.S.C. § 1595. (*Id.*). In this case, both sides seem to agree that, at the time of R.C.'s claimed injuries, the Additional Insureds neither owned nor directly operated the hotel where such injuries occurred.[2] (D.I. 9 at 4, D.I. 15 at 3).

Instead, the hotel at issue in the Underlying Action was owned and managed by Alliance. (D.I. 15 at 1, 3–4). Defendant Holiday Hospitality had previously entered into a license agreement with non-party Jai Shiyaram, Inc. permitting Shiyaram to operate the hotel as a Holiday Inn Express® & Suites, and Shiyaram entered into an agreement with Alliance to manage the day-to-day operations of the hotel. (*Id.* at 3–4). The license and management agreements provide that (1) Alliance will defend and indemnify the Additional Insureds against any claim related to the hotel and (2) that Alliance will obtain commercial general liability insurance for the hotel that

---

[1] The case was originally filed in the Southern District of Ohio but has since been transferred to the Northern District. (D.I. 25-1).

[2] The Complaint asserts that "Defendants own, supervise, manage, control and/or operate the [hotel]." In its subsequent briefing and at argument, however, PMIC acknowledges that Defendants neither owned nor directly operated the hotel. Because I may consider evidence outside the pleadings when deciding whether to dismiss pursuant to Rule 19, *Arcelik A.S v. E. I. du Pont De Nemours & Co.*, No. CV 15-961-LPS, 2018 WL 1401327, at *3 (D. Del. Mar. 20, 2018), I take PMIC at its most recent word.

2

names the Additional Insureds as additional insureds. (*Id.*). Alliance then obtained the required insurance policy from PMIC. (*Id.* at 3).

Upon being named as defendants in the Underlying Action, the Additional Insureds notified PMIC and demanded that PMIC defend and indemnify them.[3] (*Id.* at 4). PMIC refused, and then it filed this declaratory judgment action asking this Court to interpret the policy and declare that, under it, PMIC has no duty to defend or indemnify the Additional Insureds with respect to the Underlying Action. (*See generally* D.I. 1). Specifically, PMIC seeks a declaration that the policy does not require it to defend or indemnify the Additional Insureds because (1) R.C.'s alleged injury was not an accident or "occurrence" that would trigger PMIC's obligations under the insurance policy, (2) R.C.'s injury resulted from the sole negligence of the Additional Insureds rather than any negligence on the part of Alliance, the named insured, and (3) because the Additional Insureds expected or intended R.C.'s injury. (D.I. 1 ¶ 51.).

The Additional Insureds moved to dismiss this action on the basis that Alliance is a necessary and indispensable party who cannot be joined. (D.I. 9 at 6). Alternatively, the Additional Insureds ask the Court to decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act, or, failing that, to transfer this matter to the United States District Court for the Northern District of Ohio. (*Id.* at 2–3).

---

[3] Neither party raised the question of whether PMIC's request for a declaration with respect to its indemnity obligation is ripe given that there has yet been no judgment entered in the Underlying Action. Because I ultimately recommend dismissal of this action with respect to PMIC's requests for declaratory judgment regarding both its defense and indemnity obligations, however, I do not separately address the ripeness question.

3

## II. Legal Standards

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7)

In considering a motion to dismiss under Rule 12(b)(7), a court conducts a two-step inquiry. First, the court looks to Rule 19(a) to determine whether there is an absent party that should be joined as a necessary party. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If the absent party should be joined, but joinder is infeasible, then the court determines whether the absent party is indispensable under Rule 19(b). *Id.* If the absent party is indispensable, the court must dismiss the action. *Id.* A court may consider evidence outside the pleadings when deciding whether to dismiss pursuant to Rule 19. *Arcelik*, 2018 WL 1401327, at *3.

> Rule 19(a)(1) states in relevant part:
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

In Rule 19(a)(1)(B), "[c]ourts treat clauses (1) and (2) in the disjunctive just as the rule phrases them." *Gen. Refractories Co.*, 500 F.3d at 312. If either subsection is satisfied, the absent party is necessary.

Under Rule 19(a)(1)(B)(i) a party is only necessary if they have a legally protected interest in the matter; a mere "financial" interest does not suffice. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005). An absent party with a legally protected interest is a necessary party, however, regardless of whether that interest is represented by an existing party. *See id.* (comparing Rule 19 with Rule 24 and holding that "[r]ule 19 does not invite inquiry into the

4

adequacy of representation."). And, an absent party's ability to protect its interest in a matter is not impaired or impeded when a court's ruling could be used merely as "persuasive precedent" against it in a future proceeding. *Gen. Refractories Co.*, 500 F.3d at 317 (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 407 (3d Cir. 1993)). But, "[i]f issue preclusion or collateral estoppel could be invoked against [the absent party] in other litigation, continuation of the federal action could 'as a practical matter impair or impede' [the absent party's] interests," rendering the absent party necessary under Rule 19(a)(1)(B)(i). *Janney*, 11 F.3d at 409.

Rule 19(b) sets forth four factors for a court to consider in determining whether an absent party is also indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>    (A) protective provisions in the judgment;
>    (B) shaping the relief; or
>    (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

### B. Discretionary Jurisdiction under the Declaratory Judgment Act

The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The statute confers discretionary, not compulsory, jurisdiction upon federal courts. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). The Supreme Court set forth factors for courts to consider in deciding whether to exercise this jurisdiction in cases where there is a parallel state proceeding, but it has explicitly declined "to delineate the outer boundaries of that discretion in other cases, for example . . . cases

in which there are no parallel state proceedings." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995).

The Third Circuit provides that while "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction . . . it alone does not require such an exercise." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144 (3d Cir. 2014). Rather, a court may decline to exercise jurisdiction despite the absence of pending parallel state proceedings if that absence is outweighed by other factors. *Id.* *Reifer* provides the following list of non-exhaustive factors for a court to consider in determining whether to exercise jurisdiction under the Declaratory Judgment Act:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146.

The *Reifer* factors are non-exhaustive so other factors may be applicable depending on the context of the specific case. *Id.* In insurance matters, *State Auto Ins. Companies v. Summy* also applies. 234 F.3d 131 (3d Cir. 2000), as amended (Jan. 30, 2001); *see also Reifer*, 751 F.3d at 146–47. *Summy* counsels that "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction." *Id.* at 141 (quoting *Summy*, 234 F.3d at 135). Additionally, "[t]he fact that district courts are limited to predicting—rather than

establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" *Id.* at 148 (quoting *Summy*, 234 F.3d at 135).

### III. Discussion

#### A. Dismissal under Fed. R. Civ. P. 12(b)(7) is warranted.

The Additional Insureds argue that Alliance is a necessary party under any subsection of Rule 19(a). (D.I. 9 at 7). As set forth below, I cannot on this record find that Alliance would be collaterally estopped from taking an inconsistent position from this Court's ruling in subsequent litigation—meaning that Alliance is not a necessary party under Rule 19(a)(1)(B)(i). I am persuaded, however, that Alliance is a necessary party under Rule 19(a)(1)(B)(ii) because its absence leaves PMIC, and possibly the Additional Insureds, at a risk of incurring inconsistent obligations. Because I recommend dismissal on this ground, I do not evaluate the Additional Insureds' remaining Rule 19(a) arguments.

First, I agree with the Additional Insureds that Alliance has an interest in the action. Fed. R. Civ. P. 19(a)(1)(B) ("the person claims an interest relating to the subject of the action"). As the policyholder, Alliance has an interest in the favorable interpretation of its own policy and enforcement of the terms for which it bargained. The arguments that PMIC advances in support of its request for a declaration to deny coverage to the Additional Insureds, *see supra* p. 3, will require interpretation of Alliance's insurance policy or a determination of liability for the alleged harms in the Underlying Action. And, a decision here that PMIC is not obligated to defend or indemnify the Additional Insureds could leave Alliance with an uninsured or, if Alliance is still entitled to insured contract coverage rather than the more favorable additional insured coverage, an underinsured obligation to the Additional Insureds pursuant to its separate agreements with them.

PMIC argues that Alliance is not an interested party because any interest it has is merely financial, citing *Treesdale*, 419 F.3d. 216, for the proposition that financial interests are not legally protected interests under Rule 19. (D.I. 15 at 5). In *Treesdale*, two individuals who alleged they were harmed by exposure to asbestos-containing products sought to intervene under Rule 24 in a lawsuit between the insurance carrier and the manufacturer of the asbestos-containing products. *Id.* at 219. In that lawsuit, the insurance carrier sought a declaration that it no longer needed to defend and indemnify the manufacturer once the amount paid reached the policy's limits. *Id.* The individuals sought to intervene under Rule 24(a) on the theory that they were necessary parties under Rule 19(a) because their right to recover for asbestos-related injuries could be eliminated if the carrier no longer paid on the lawsuits. *Id.* The district court denied intervention. *Id.* The Third Circuit affirmed, reasoning that the parties "have no property interest in the [insurance] policies nor do they have any other legally protectable interest in the policies." *Id.* at 222. With respect to Rule 19(a), the Third Circuit confirmed that the parties' interest was "merely a financial" one and, thus, they were not necessary parties under Rule 19(a)(1)(B).

Alliance is unlike the parties in *Treesdale*. Here, Alliance is the policyholder, and this litigation asks the Court to interpret and enforce Alliance's own policy in its absence. Alliance's interest is not "merely financial"—it is in determining the scope of coverage and protecting its bargained-for rights under the insurance policy. Thus, I am persuaded that Alliance has a legally protected interest in this action under Rule 19(a)(1)(B). (*See also* D.I. 26 at 22:6–9 (in response to the Court's question, "[h]ow does that not affect Alliance's rights[,]" counsel for PMIC said, "[o]ne, I think it does affect their rights, potentially.")).

I turn now to whether Alliance is a necessary party under either subsection (i) or (ii) of Rule 19(a)(1)(B).

PMIC argues that Alliance is not a necessary party because its interests are aligned with and sufficiently protected by the Additional Insureds. This argument appears untethered to Rule 19(a)(1)(B), which does not on its face consider whether the absent party's interest is adequately represented. Furthermore, the Third Circuit noted in *Liberty Mut. Ins. Co.* that "[r]ule 19 does not invite inquiry into the adequacy of representation." 419 F.3d at 230.

In connection with this argument, PMIC also argues that Alliance is not a necessary party because it, as a non-party, would not be bound by this Court's ruling. Although it does not specifically use the words "collateral estoppel," pairing its argument with the legal requirements of Rule 19(a)(1)(B)(i), I understand that to be the essence of PMIC's argument. Here, I agree with PMIC that Alliance is not a necessary party under Rule 19(a)(1)(B)(i) because I cannot, on this record, find that Alliance would be collaterally estopped from taking a position in a future proceeding that is inconsistent with this Court's ruling. To determine whether Alliance would be collaterally estopped from asserting its rights in another forum, and thus a necessary party under Rule 19(a)(1)(B)(i), I would first need to determine which forum's collateral estoppel law applies. PMIC was not willing at this stage to agree that Ohio law applies (Tr. 21:1-6), and it is, at any rate, unclear whether any subsequent action would be filed in Ohio's state or federal courts, or whether that would make a meaningful difference. To that point, neither party provided an analysis of applicable law. And neither party provided a substantive analysis of the principles of collateral estoppel. As a result, I cannot on this record find that Alliance would be collaterally estopped from taking positions in subsequent litigation that are inconsistent with the Court's eventual ruling here. Because Alliance would not be barred, as least not on the record before me, I do not find that Alliance is a necessary party under Rule 19(a)(1)(B)(i) because it may still litigate to protect its interests in a separate action.

Instead, I find that Alliance is a necessary party under Rule 19(a)(1)(B)(ii). Rule 19(a)(1)(B)(ii) provides that a party is necessary if its absence will "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Here, both PMIC and the Additional Insureds are at risk of incurring inconsistent obligations. (D.I. 26 at 9:16–21 (counsel for the Additional Insureds: "I would say they would argue they're not bound by anything this Court would do, but it could lead to inconsistent judgments and inconsistent determinations on those issues.")). If Alliance were to assert its rights at issue here in a future action elsewhere, PMIC is at risk that the court in that action, not bound by this Court's interpretation or conclusion, reaches a different conclusion. Indeed, there is no real dispute between the parties that Alliance owned, operated, and managed the hotel at all relevant times, meaning that its actions or omissions will be at issue in two actions, subject to interpretation by two different courts, likely on different factual records. As a result, PMIC may have on one hand a declaration from this Court that it need not defend or indemnify the Additional Insureds in the Underlying Action and on the other hand a judgment or declaration from a court in Ohio (or elsewhere) that PMIC's obligations under the policy, or the scope of policy coverage itself, are different than what this Court determines.

The fact that such an action has yet to be filed does not compel a different result. At the very least, the Additional Insureds have said that they intend to bring an action in Ohio to assert their indemnity claims against Alliance. (D.I. 26 at 7:5–10). While it is possible in theory that Alliance may choose not to in turn assert its rights under the additional insured provision of its policy with PMIC,[4] I find it at least reasonably likely that Alliance will have some interest in

---

[4] For the reasons set forth herein, I am assuming here that Alliance would have the opportunity to do so. If it would not have such an opportunity, then Alliance would instead be a necessary party

asserting its rights in an action elsewhere, giving rise to a risk of inconsistent decisions regarding PMIC's obligations.

For similar reasons, the Additional Insureds also argue that they bear a substantial risk of incurring inconsistent obligations with respect to the conduct alleged in the Underlying Action because, for example, one of PMIC's defenses to coverage is that the Additional Insureds are solely negligent for R.C.'s injuries. As a result, "if Alliance is not made a part of this declaratory judgment action, the Additional Insureds will have no choice but to litigate Alliance's liability and indemnity obligations in a *separate* action in Ohio, leading to the possibility of inconsistent determinations on this issue." (D.I. 9 at 8). By virtue of PMIC's argument, Alliance's potential liability will be a necessary part of this action as well as any action in Ohio, meaning that the Additional Insureds also face a risk of incurring inconsistent judgments. PMIC acknowledges the risk of inconsistent judgments but argues that the risk is immaterial because any inconsistency would work in the Additional Insureds' favor. (D.I. 15 at 6). I'm not sure that PMIC is necessarily correct; however, even assuming it is, PMIC cites no authority for the proposition that the legal analysis may turn on who benefits from inconsistency when there is a risk of inconsistency. Accordingly, I find that Alliance is a necessary party under Fed. R. Civ. P. 19(a)(1)(B)(ii).

I must now determine whether joinder is infeasible. *Gen. Refractories*, 500 F.3d at 312. The Additional Insureds argue that joinder is infeasible because Alliance is not subject to personal jurisdiction in this Court. PMIC does not argue otherwise. Alliance is organized and headquartered in Ohio, and there are no facts in the record before me that would support a finding that Alliance has sufficient contacts with Delaware to subject it to this Court's jurisdiction in this

---

here under Rule 19(a)(1)(B)(i) because this action would be the only opportunity for Alliance to protect its interest in the interpretation and enforcement of that portion of its policy.

action. *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) (discussing the circumstances under which an out-of-state defendant might nevertheless be subject to the jurisdiction of the courts of the forum state); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). As a result, I agree with the Additional Insureds that joinder is infeasible.

The final determination in a court's Rule 19(a)(1)(B) analysis is whether a necessary party is also indispensable under Rule 19(b). If it is, dismissal is required. An indispensability analysis looks at four factors. *See supra* p. 5. The Additional Insureds argue that Alliance is indispensable because Alliance would be prejudiced if this action were to proceed in its absence, and that any prejudice cannot be mitigated. They also argue that PMIC would have an equally adequate remedy if this action were pursued in a comprehensive action in Ohio where Alliance could be joined. (D.I. 9 at 12–13). In response, PMIC cites the rule and relevant caselaw but it offers no argument that Alliance is not indispensable. (D.I. 15 at 7–8).

I am persuaded that Alliance is an indispensable party in this action. With respect to the first factor, Rule 19(b)(1), interpreting Alliance's insurance policy in its absence creates the risk of prejudice to Alliance given that, for example, a finding that PMIC is not obligated to defend the Additional Insureds in the Underlying Action could leave Alliance obligated to indemnify the Additional Insureds without the benefit of the full amount of coverage it negotiated for the Additional Insureds. While Alliance may still be able to obtain the benefit of insured contract coverage, the Additional Insureds point out that it is not as favorable to Alliance as the coverage at issue in this action. (D.I. 16 at 3–4). And, PMIC admits that it may use a favorable decision in this Court to try to limit coverage owed under the policy to Alliance. (D.I. 26 at 25:25–26:1). Moreover, PMIC's arguments here likely require some legal and factual determination of

Alliance's ultimate culpability regarding R.C.'s allegations. *See supra* p. 12. I see no way to mitigate these risks to Alliance while still fairly adjudicating the present dispute (and PMIC has not identified a way to do this), so the second factor, Rule 19(b)(2), favors finding Alliance indispensable as well. The third factor, Rule 19(b)(3), likewise favors finding that Alliance is indispensable because judgment rendered here in the absence of Alliance may not be wholly adequate, as it might, for example, involve determining whether and to what extent Alliance is liable for the injuries in the Underlying Action—an issue that would likely need to be relitigated in a future action between Alliance and the Additional Insureds. Finally, the fourth factor, Rule 19(b)(4), also favors finding Alliance indispensable because, if this action were dismissed, PMIC would have an opportunity to participate in a comprehensive action in Ohio and the same remedies it seeks here would be available there.

Because I find that Alliance is a necessary and indispensable party that cannot be joined in this action, I recommend that the Court dismiss this action under Rule 12(b)(7).

### B. Declining jurisdiction under the Declaratory Judgment Act is appropriate.

Alternatively, dismissal is also warranted on the grounds that it would be appropriate to decline jurisdiction. While I note that there is no pending parallel state proceeding, which "militates significantly in favor of exercising jurisdiction," the lack of a parallel state proceeding is not dispositive. *Reifer*, 751 F.3d at 144 ("the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider."). Indeed, there was no parallel state proceeding in *Reifer*. I therefore turn to the *Reifer* factors, *see supra* p. 6, as well as the practical considerations of this case, and I find that they outweigh the absence of a parallel state action such that this Court should decline to exercise jurisdiction.

The first factor (resolve uncertainty) weighs in favor of declining jurisdiction. This Court can interpret the insurance policy and determine whether PMIC has an obligation to defend the Additional Insureds in the Underlying Action, but some uncertainty as to PMIC's obligations (as well as Alliance's) would remain, as set forth above, since Alliance may pursue its own remedies elsewhere for the denial or limitation of coverage. And, since any declaration issued by this Court would not be binding on Alliance, this Court's ruling might not be the final or only decision on the issues implicated by this litigation.

The second factor (convenience of the parties) is neutral. Six Continents is incorporated in Delaware, and Holiday Hospitality is a Delaware LLC. PMIC is a Pennsylvania corporation located in southeastern Pennsylvania. Litigating the dispute here would not necessarily be inconvenient, though the Additional Insureds' objection to that conclusion on the basis that none of the parties are headquartered in Delaware is noted. (D.I. 9 at 16).

The third factor (public interest in settlement of the uncertainty of the obligation) is neutral or weighs slightly in favor of declining jurisdiction. While there is no special federal interest at stake here, there is nevertheless "the usual interest in fair adjudication," which in the general case may weigh in favor of exercising jurisdiction. *See Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 288 (3d Cir. 2017). However, this case involves determining the scope of coverage of an Ohio company's insurance policy, likely applying Ohio law, for injuries that are alleged to have occurred in Ohio. Accordingly, there is at least slightly more public interest in the settlement of this dispute in another forum even if there is some general interest in fair adjudication here.

The fourth factor (availability and relative convenience of other remedies) is either neutral or weighs slightly in favor of exercising jurisdiction. This Court is equally capable of rendering a

judgment in this declaratory judgment action as a state court or another federal court, so other remedies are not necessarily more adequate or convenient.

The fifth factor appears to weigh in favor of exercising jurisdiction given the lack of a pending state court action, but the facts here render this factor either neutral or slightly in favor of declining jurisdiction. The fifth factor reflects the "general policy of restraint when the same issues are pending in a state court," *Reifer*, 751 F.3d at 144. There is no pending state court action here, which might otherwise counsel against declining jurisdiction. However, there are relevant issues of Ohio law pending in another federal court in Ohio. And, I note that PMIC has not raised pure questions of contract interpretation. By alleging that R.C.'s injuries in the Underlying Action resulted from the sole negligence of the Additional Insureds, and that the Additional Insureds expected or intended that plaintiff's injuries, PMIC raises fact issues that may likewise be at issue in the Underlying Action. It is therefore appropriate for this Court to be cognizant of the potential conflict and to consider exercising some level of restraint in deciding those issues.

These same issues are also likely to be the subject of litigation between Alliance and the Additional Insureds (or possibly Alliance and PMIC) in a future action to resolve Alliance's indemnification obligations. This creates a substantial risk of duplicative litigation when all issues related to both Alliance's and PMIC's indemnification and defense obligations could instead be resolved in a single comprehensive action elsewhere. Factor six (avoidance of duplicative litigation) therefore weighs in favor of declining jurisdiction.

Factor seven likewise weighs in favor of declining jurisdiction. The same circumstances discussed as relevant to factors five and six provide support for the Additional Insureds' suggestion that PMIC is using this declaratory judgment action "as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*," *Reifer*, 751 F.3d at 144.

Finally, while the Additional Insureds have not pointed out a specific conflict of interest between PMIC's duty to defend in state court and their positions here, I note that the language of the eighth factor suggests that there is an "inherent" conflict of interest under these circumstances. *Id.* In the absence of evidence that there is no conflict of interest, I accordingly find that it likewise weighs in favor of declining jurisdiction.

Since this case arises in the insurance context, I also consider the additional guidance provided by *Summy* regarding issues of state law. At argument, I asked counsel for PMIC whether Ohio law was settled on the issue of whether sex trafficking is an "occurrence" for purposes of an insurance policy, and counsel responded, "I don't know how settled it is anywhere because it's a relatively new development." (D.I. 26 at 31:6–7). Counsel for the Additional Insureds seemingly agreed, writing "this case presents an issue central to developing Ohio insurance law–whether sexual trafficking constitutes an 'occurrence.'" (D.I. 16 at 6–7). At oral argument, counsel for the Additional Insureds equivocated a bit, arguing that the issue was settled but also that it was under attack by insurance companies. (D.I. 26 at 37:7–18). At any rate, since I am cognizant of the fact that federal courts predict state law rather than establish it, *Summy*, 234 F.3d at 135, and considering that both parties acknowledged that the law is "[un]settled," "under attack" or "developing," I cannot conclude that state law is unequivocally settled. *Summy*'s additional guidance weighs slightly in favor of declining jurisdiction.

Weighing all the aforementioned factors, I am mindful of *Reifer*'s guidance with respect to a pending state court proceeding, but I am also mindful of the fact that there was no such proceeding in *Reifer* as well as of *Reifer*'s guidance that the existence of pending state court proceeding is but one factor to consider. In accordance with *Reifer*, I am persuaded that the lack of pending state court proceedings here is outweighed by the other factors in this case.

Accordingly, I find that it would be appropriate for the Court to decline jurisdiction under these circumstances. Having recommended dismissal, I do not reach the question of whether transfer is appropriate.

### IV. Conclusion

Most everything about this case suggests that it would more appropriately be heard in Ohio than in Delaware. The dispute involves determining the scope of an Ohio company's insurance policy under somewhat unsettled Ohio law for injuries that occurred in Ohio and for which the victim is seeking redress in Ohio. Moreover, the Ohio company is a necessary and indispensable party that cannot be joined here for lack of personal jurisdiction. Even if this case could proceed in the company's absence, the circumstances here counsel against exercising declaratory judgment jurisdiction. Accordingly, I recommend that the Additional Insureds' Motion to Dismiss be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the Court's website.

The Honorable Laura D. Hatcher
UNITED STATES MAGISTRATE JUDGE

Dated: November 2, 2023